**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Abdullah Drew Hakim | ) | |
| (R-66864), | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 13 C 50067 |
| | ) | |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| Warden Kenneth Osborne, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants' motion for judgment on the pleadings as to Counts 11, 12, 13 and 14 of Plaintiff's second amended complaint [44] is denied. Defendants' answer is to be filed within 21 days of this order. Plaintiff's motion for recruitment of counsel [49] is denied without prejudice.

**STATEMENT**

Plaintiff, a prisoner at Western Correctional Center, has brought this *pro se* civil action pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendants' motion for judgment on the pleadings as to Counts 11, 12, 13, and 14 of Plaintiff's second amended complaint.

The court applies the same standard for a motion for judgment on the pleadings as when it decides a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). It is well established that *pro se* complaints are to be liberally construed. *Kaba v. Stepp*, 458 F.3d 678, 681, 687 (7th Cir. 2006)*. Pro se* submissions are held to a less stringent standard than formal pleadings drafted by lawyers. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff must only state his basic legal claim and provide "some indication . . . of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Bell Atlantic Corp.,* 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555. While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

Plaintiff alleges that in late December 2011/early January 2012, while imprisoned at the Sheridan Correctional Center, he entered into a second Earned Good Conduct Credit Contract (EGCCC). The EGCCC was to end March 27, 2012.

On January 15, 2012, Plaintiff filed a written complaint/appeal against Stephanie Wright, a Westcare Drug Counselor Supervisor. Plaintiff requested that he be housed in another building due to Wright's unfair practice of administering discipline without following protocol. The complaint/appeal indicated that he feared Wright was planning on creating a false paper trail of misconduct by Plaintiff to punish him, to have him transferred without cause, and to have him lose placement in drug treatment, barber college, job placement and the EGCCC program. Two days later, Defendant Westcare Director Stan Brooks asked Plaintiff, with Wright in the room, if he stated that he was "gonna f***" her up?" Plaintiff asked Wright why she would lie about an incident and that it was a coincidence that she lied about Plaintiff after he filed a complaint against her. Two days later, Brooks told Plaintiff he was not "gonna go against my employees" and that Plaintiff needed to "stick it out."

On January 30, 2012, inmate Jerrett and Plaintiff told Wright that neither of them made any threats of violence. On January 31, 2012, Wright intentionally canceled a scheduled group activity so that inmate Jackson would threaten and verbally assault Plaintiff. Inmate Jackson threatened to beat Plaintiff if he did not get off the phone and Wright told Plaintiff that he would lose a day of good time credit if he spoke. On February 2, 2012, Wright told Plaintiff that he received a one-week discipline assignment of cleaning because he threatened inmate Jerrett. On February 3, 2012, Wright threatened Plaintiff with a day's loss of good time credit if he went to the gym without wiping down the walls and doors.

On February 23, 2012, Wright falsely accused Plaintiff of misconduct. Plaintiff was taken to a different building and placed on "pink tag" (inmates on pink tag are on disciplinary transfer and are denied certain privileges, such as exercise and haircuts). Later, Plaintiff received a false disciplinary report that was written by Wright. On February 28, 2012, Plaintiff appeared before the adjustment committee regarding the disciplinary report. Plaintiff pled not guilty and he told the committee that Wright wrote the disciplinary to retaliate against him. After Brooks was called to the hearing, Plaintiff was informed that all charges except insolence were dropped and that his contract would not be affected. However, Plaintiff was placed in the second chance program, requiring him to be demoted from Phase II of the program to Phase I. Plaintiff continued to attend "group" until March 23, 2012, fulfilling his EGCCC. Plaintiff later learned that his EGCCC had been terminated.

On March 23, 2012, Plaintiff entered into another EGCCC. On April 3, 2012, Plaintiff was disciplined based on false charges that he threatened an inmate. On April 9, 2012, Plaintiff signed the most recent EGCCC. On April 17, 2012, Plaintiff was again falsely accused of misconduct. Plaintiff was transferred to another building and was placed on pink tag because of the false

allegations. While on pink tag, Plaintiff received a copy of his second EGCCC, which indicated that the contract was terminated on February 23 2012, because Plaintiff quit the program.

On April 24, 2012, Plaintiff had a hearing before the adjustment committee on the false charges. During the hearing, Plaintiff was informed that he was going be transferred due to discipline issues. Plaintiff was found guilty without being able to call his witnesses. On April 30, 2012, Plaintiff again appeared before the adjustment committee. Plaintiff was informed that he was being transferred to another facility. Plaintiff was placed in a different cell and denied exercise, proper heat, and soap.

On May 21, 2012, Plaintiff learned that his third EGCCC was not in his master file. Plaintiff alleges that the third EGCCC was not placed in his file in retaliation for his many grievances and complaints and in conspiracy to have him lose good time credit and have him transferred. Plaintiff was subsequently transferred to another facility.

Defendant first argues that Plaintiff has not sufficiently pled a violation of equal protection. In Count 11, Plaintiff alleges that the Defendants violated his right to equal protection by treating him differently than other similarly situated inmates with similar sentences and convictions.

Plaintiff alleges that he is being treated differently than other prisoners. Prisoners are not a suspect class. *Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003). However, the Equal Protection clause also protects individuals from purely arbitrary government classification, even if just one person is treated differently for arbitrary and irrational purposes – the "so-called 'class-of-one' equal protection claim." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Under a class-of-one claim, the plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To survive dismissal, the plaintiff must allege facts that are sufficient to overcome a presumption of rationality that applies to government classifications. *D.B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). If the allegations in the complaint reveal a rational basis for treating the plaintiff differently, even if there are allegations that the action was take out of animosity, the plaintiff has pled himself out of court. *D.B.*, 725 F.3d at 686. The test for such a claim is not "whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment." *Id.* (emphasis in original) (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Here, Plaintiff alleges a history of multiple false disciplinary tickets, improper disciplinary hearings, and threats of the loss of good time credit all for the purpose of hindering his ability to receive good time credits under the EGCCC and to have him transferred to another facility. While the actions taken against Plaintiff could have a been a rational response to the disciplinary issues Plaintiff was alleged to have been involved in, his allegations that all of them were false and the Defendants knew that they were false, in conjunction with the number of incidents in a short time period, sufficiently allege an actionable class-of-one equal protection claim. *See Geinosky*, 675 F.3d at 748 (allegations that plaintiff received 24 bogus tickets from defendants demonstrated a pattern of unjustified harassment that rose to the level of actionable class-of-one equal protection claim). While Plaintiff may not be able to prove the alleged pattern of unjustified actions by the Defendants, at this stage of the proceedings, he may proceed on his equal protection claim.

In Counts 12 through 14, Plaintiff alleges that he was denied due process by not receiving and by being deprived of earned good conduct credit. He also alleges in Count 14 that he was denied due process he received discipline that resulted in his not being able to enter into an EGCCC for ninety days.

Once awarded, good time credits are a statutory liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001). And while the Constitution does not guarantee good time credit for good behavior or educational programs, the State may create such a liberty interest. *See Wolff*, 418 U.S. at 557. If "the State's action will inevitably affect the duration of the sentence, there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence." *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996), *citing Sandin v. Connor*, 515 U.S. 472, 487 (1995) (internal quotation marks omitted). If the good time credits are not inevitable, there is no liberty interest. *Id.; see also, Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (finding conclusory allegation that plaintiff "would" have received good-time credit was insufficient to state a due process claim). However, if the State's good time credit statute takes away the discretion of prison officials in determining whether good-time credit shall be awarded, a statutory liberty interest is created. *See Montgomery*, 262 F.3d at 645 (finding Indiana statute that provided for an entitlement of good time credit subject to decrease for misconduct by the prisoner that must be specified by rule and curtailed the administrator's discretion gave prisoner a liberty interest in the possible good-time credit); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (finding that plaintiff had a liberty interest in earned-credit time and his credit-earning class); *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (finding that the State of Illinois created a statutory right to good conduct credit for prisoners).

Here, Defendants argue that Plaintiff does not have a liberty interest in his possible good-time credits that he did not receive because, as allowed by the statute, he was removed from the program for discipline reasons. However, unlike the plaintiff in *Zimmerman*, Plaintiff not only alleges that he would have received the good time credits if he had not been removed from the program, he also alleges that the only reason he did not earn them was because of the actions of several Defendants writing false disciplinary tickets and holding improper hearings. Thus, Plaintiff alleges more that just a possibility of receiving the good time credits. Furthermore, the Illinois good time credit statute mirrors the lack of the Illinois prison administrator's discretion in issuing good-time credits. *See Montgomery*, 262 F.3d at 645; *Eichwedel*, 696 F.3d at 675; *see also, Holly v. Durbin*, No. 06 C 3212, 2007 WL 2700159, at * 2 (C.D. Ill. July 23, 2007) (Mills, J.) (denying dismissal of due process claims by Illinois prisoner based on allegations of losing possible good-time credit under a EGCCC and a delay in re-enrolling in another EGCCC).

Based on the above, and in light of the stage of the litigation, Plaintiff has sufficiently plead his due process claims and the Defendants' motion for judgment on the pleadings is denied.

Plaintiff also moves for the recruitment of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). If so, the court must examine "whether the difficulty of the case--factually and legally--exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the

tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

      After considering the above factors, the court concludes that the solicitation of counsel is not warranted in this case. While Plaintiff indicates that he has attempted to retain private counsel, the complaint sets forth cognizable claims and Plaintiff has alleged no physical or mental disability that might preclude him from adequately investigating the facts giving rise to his complaint. Plaintiff, whose submissions are coherent and articulate, appears capable of litigating this matter. This is clearly demonstrated by the quality of Plaintiff's pleadings that he has submitted to the Court, including his opposition to the instant motion. It is additionally noted that the court grants *pro se* litigants wide latitude in the handling of their lawsuits. Therefore, Plaintiff's motion for attorney representation is denied at this time. Should the case proceed to a point that assistance of counsel is appropriate, the court may revisit this request.

Date:   November 22, 2013